UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY CROMWELL,<br><br>  Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN,<br><br>  Defendant. | Case No. 18-cv-06187-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 15 |

  Plaintiff Ashley Cromwell has filed suit against Defendant Kaiser Foundation Health Plan ("Kaiser"), alleging that it unlawfully changed the terms of her health plan in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Currently pending before the Court is Kaiser's motion to dismiss. In its motion, Kaiser asks that two of the three causes of action asserted by Ms. Cromwell be dismissed. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Kaiser's motion.

    **I.  FACTUAL & PROCEDURAL BACKGROUND**

  In her complaint, Ms. Cromwell alleges as follows.

  Ms. Cromwell and her family receive health care benefits through a plan sponsored by her employer, Covenant Care. *See* Compl. ¶ 5. Kaiser adjudicates and funds the benefits administered under the plan. *See* Compl. ¶ 7.

  Ms. Cromwell's daughter is autistic and received speech therapy treatment for her autism. Initially, the plan provided for speech therapy for autism on the same terms as it provided Applied Behavioral Analysis therapy and in-patient treatment – *i.e.*, the cost to a beneficiary was simply a

$20 copayment. *See* Compl. ¶ 13. But on December 18, 2017, Kaiser sent Ms. Cromwell a letter, stating that, "when [her] plan renew[ed] in 2018," the speech therapy treatment would first be subject to a $2,000 deductible, before the $20 copayment process would kick in. *See* Compl. ¶ 14. The letter indicated that the terms of the health benefits plan were changed because, "[u]nder California Senate Bill 946, physical, occupational, and speech therapy aren't considered mental health services. Consistent with this state law, these services are now covered under your plan's standard physical, occupational, and speech therapy benefits." Compl. ¶ 14.

Ms. Cromwell understood that the change in terms would apply starting January 1, 2018, even though it did not actually apply until after May 31, 2018. *See* Compl. ¶ 15. Therefore, because of her limited financial means, she discontinued the services for her daughter in December 2017. *See* Compl. ¶ 15.

According to Ms. Cromwell, the new plan terms conflict with the California Mental Health Parity Act. California Health & Safety Code § 1374.73 provides that "[e]very health care service plan contract that provides hospital, medical, or surgical coverage shall also provide coverage for behavior health treatment for . . . autism," and "[t]he coverage shall be provided in the same manner and shall be subject to the same requirements as provided in [§] 1374.72." Cal. Health & Safety Code § 1374.73(a)(1). Section 1374.72, in turn, provides in relevant part that "[e]very health care service plan contract . . . that provides hospital, medical, or surgical coverage shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age, and of serious emotional disturbances of a child . . . under the same terms and conditions applied to other medical conditions." *Id.* § 1372(a). Ms. Cromwell alleges that the plan is inconsistent with California law because it "subject[s] [her] to higher out-of-pocket payments for physical, occupational, and speech therapy for her autistic daughter than for other non-physician specialist visits." Compl. ¶ 19. Although Ms. Cromwell implicates an alleged conflict with California law in her complaint, the causes of action pled therein all assert a violation of ERISA, and not any state law in particular, including the California Mental Health Parity Act.

The three ERISA claims asserted by Ms. Cromwell are as follows:

(1) A claim pursuant to 29 U.S.C. § 1132(a)(1)(B). Ms. Cromwell seeks a declaration of

2

United States District Court
Northern District of California

rights to future benefits – more specifically, that the change in Plan terms is unlawful and cannot be enforced. *See* Compl. ¶ 25.

(2) A claim pursuant to § 1132(a)(3). Ms. Cromwell alleges that, in changing the terms of the plan, Kaiser breached its fiduciary duty. She seeks equitable relief for Kaiser's breach – in particular, reformation of the Plan. *See* Compl. ¶¶ 32-33.

(3) A claim pursuant to § 1132(a)(2). Similar to above, Ms. Cromwell alleges that, in changing the terms of the plan, Kaiser breached its fiduciary duty. As relief, she asks that Kaiser be ordered to disgorge to the plan – for the benefit of all participants and beneficiaries – all sums it received in excess of the $20 copayment. *See* Compl. ¶ 37.

Kaiser has moved to dismiss only the second and third causes of action above (*i.e.*, the §§ 1132(a)(3) and 1132(a)(2) claims).

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations," "it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1067-68. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

3

B.  Section § 1132(a)(3) Claim (Second Cause of Action)

As noted above, Ms. Cromwell's second cause of action is based on § 1132(a)(3). Section 1132(a)(3) provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or *(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.*

29 U.S.C. § 1132(a)(3) (emphasis added). In the instant case, Ms. Cromwell maintains that Kaiser has violated ERISA because it breached its fiduciary duty, *see* 29 U.S.C. § 1104(a)(1)(A)-(B) (describing fiduciary duty owed),[1] and, as relief, asks for "appropriate equitable relief, including but not limited to reformation of the Plan to conform to the requirements of the law." Compl. ¶ 33.

Kaiser answers with two arguments: (1) Kaiser could not breach any fiduciary duty because it was not acting as a fiduciary when it amended the plan (as opposed to managing or administering the plan), and (2) Ms. Cromwell's claim under § 1132(a)(3) is duplicative of her first cause of action under § 1132(a)(1)(B). As the Court indicated at the hearing on the motion to dismiss, it does not find Kaiser's second argument persuasive. Although the Court agrees that duplicative recovery is not permitted, at this early stage in the litigation, Ms. Cromwell should be allowed to plead alternative theories of liability. *See Moyle v. Liberty Mut. Retirement Ben. Plan*,

---

[1]
> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A)  for the exclusive purpose of:
>
>   (i)  providing benefits to participants and their beneficiaries; and
>   (ii) defraying reasonable expenses of administering the plan;
>
> (B)  with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A)-(B).

823 F.3d 948, 961 (9th Cir. 2016). Nevertheless, because the Court finds that Kaiser's first argument has merit, it dismisses the § 1132(a)(3) claim, and with prejudice.

Ms. Cromwell's § 1132(a)(3) claim for equitable relief is predicated on an alleged breach of fiduciary duty by Kaiser. To establish a § 1132(a)(3) claim for breach of fiduciary duty, Ms. Cromwell must show that Kaiser was "an ERISA fiduciary acting in its fiduciary capacity" and that Kaiser violated "'ERISA-imposed fiduciary obligations.'" *Matthews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996)). Kaiser's primary argument is that it was not acting as a fiduciary when it amended the plan terms and therefore Ms. Cromwell cannot state a claim under § 1132(a)(3). *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (holding that, "[i]n every case charging breach of ERISA fiduciary duty [sic] the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint").

The Court agrees. In amending the plan Kaiser did not act as a fiduciary. Under 29 U.S.C. § 1002(21)(A), "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting *management* of such plan . . . or any discretionary authority or discretionary responsibility in the *administration* of such plan." 29 U.S.C. § 1002(21)(A) (emphasis added). Here, Kaiser's act of amending the terms of the plan was, in effect, acting to design the plan; plan *design* is different from plan *management* or *administration*.

The Supreme Court has underscored this distinction. In *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), the Court held that "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries" because "'[t]he *defined functions [in the definition of fiduciary] do not include plan design*, [and thus] an employer may decide to amend an employee benefit plan without being subject to fiduciary review.'" *Id.* at 890 (emphasis added; quoting *Siskind v. Sperry Ret. Prg., Unisys*, 47 F.3d 498, 505 (2d Cir. 1995). Thus, "'amending or terminating a plan . . . cannot be an act of plan "management" or "administration."'" *Id.* (quoting *Varity*, 516 U.S. at

5

505); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) (holding that ERISA's fiduciary duty requirement was not implicated where Hughes, acting as the plan's settlor, made a decision regarding the form or structure of the plan such as who is entitled to receive plan benefits and in what amounts, or how such benefits are calculated; "[a]n employer's decision to amend a pension plan does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets"); *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 6-7 (1st Cir. 2003) (holding that the employer-plan administrator was not acting as a fiduciary when it amended the terms of employee's severance plan because employers have the right to amend or end a welfare benefit plan at any time; "[t]he act of amending the terms of a plan is not one to which a fiduciary duty applies"); *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1047 (9th Cir. 2000) (holding that an employer does not act in its fiduciary capacity as a plan administrator when it makes a business decision to amend a plan).

In response, Ms. Cromwell argues that the cases on which Kaiser relies are distinguishable because they only establish that the plan *sponsor* (typically the employer) is not acting as a fiduciary when it amends the terms of the plan. Ms. Cromwell emphasizes that none of the cases address whether a plan *administrator* (as Kaiser is here) – as opposed to a plan *sponsor* – amends the terms of a plan.

But, as Kaiser argues, whether one is a fiduciary turns on the entity's actions, not its status or position. The text of ERISA focuses on the function, not the title of the actor. *See* 29 U.S.C. § 1002(21)(A) (providing that "a person is a fiduciary with respect to a plan to the extent he *exercises* any discretionary authority or discretionary control respecting *management* of such plan . . . or any discretionary authority or discretionary responsibility in the *administration* of such plan") (emphasis added). Case law is in accord.[2] *See, e.g.*, *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277-79 (11th Cir. 2005) (stating that "a party is a fiduciary only 'to the extent' that it

---

[2] In her supplemental letter brief, Ms. Cromwell contends that, even if a plan administrator does not act as a fiduciary when it amends the terms of a plan, it clearly acts as a fiduciary when it administers the plan, and thus "the ongoing administration of an ERISA plan [in] a manner that violates applicable state laws is an actionable breach of fiduciary duty." Pl.'s Letter Brief at 1 But this argument elevates form over substance; the source of the injury here was the amendment of the plan.

6

performs a fiduciary function" and thus "'a court must ask whether a person is a fiduciary with respect to the particular activity at issue'"; providing examples of where an insurer did not act as a fiduciary); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-CV-09329 (SHS) (DF), 2015 U.S. Dist. LEXIS 144367, *4-6 (S.D.N.Y. Oct. 16, 2015) (noting that, "[w]hen . . . [a plan] administrator performs 'settlor functions,' such as the establishing, funding, amending, or terminating a plan, its actions are akin to those taken by the settlor of a trust, rather than a trustee, and ERISA imposes no fiduciary obligations for such conduct"); *Valdosta Med. Clinic, P.C. v. Standard Ins. Co.*, No. 1:07-CV-2354-BBM, 2008 WL 11407327, at *8 (N.D. Ga. Apr. 25, 2008) (stating that "Standard is a fiduciary for purposes of deciding whether a beneficiary is entitled to benefits" but that "parties do not act in their fiduciary capacities when they modify an existing plan").

The cases on which Ms. Cromwell relies (including those cited in her supplemental letter brief) are not to the contrary. For example, *Johnson v. Allsteel, Inc.,* 259 F.3d 885 (7th Cir. 2001), does not discuss when a person or entity is considered an ERISA fiduciary and addresses instead an issue on standing only. Similarly, *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), does not discuss when a person or entity is considered an ERISA fiduciary and focuses instead on whether reformation of a plan is permissible as relief under § 1132(a)(3). *Gallagher v. Empire HealthChoice Assurance Inc.*, 339 F. Supp. 3d 248 (S.D.N.Y. 2018), also does not concern when a person or entity is deemed an ERISA fiduciary. Furthermore, the case is distinguishable because, there, the claim was predicated on a failure to comply with the federal Parity Act, and, "'[a]lthough there is no private right of action under the Parity Act, portions of the law are incorporated into ERISA and [thus] may be enforced using the civil enforcement provisions in ERISA § 502.'" *Id.* at 255 (emphasis added); *see also* 29 U.S.C. § 1132(a)(3) (providing that a claim may be brought for equitable relief to address a violation of ERISA). While *Z.D. v. Group Health Cooperative*, 829 F. Supp. 2d 1009 (W.D. Wash. 2011), concerned a state Parity Act, the terms of the plan at issue there expressly required compliance with state law. *See id.* at 1015 (rejecting defendants' argument that the state Parity Act did not affect the terms of the plan because "the terms of the Plan require that Defendants 'comply' with Washington law in the

7

performance of the parties' Plan Agreement") (emphasis omitted); *see also* 29 U.S.C. § 1132(a)(3) (providing that a claim may be brought for equitable relief to enforce plan terms).[3]

The Court therefore dismisses Ms. Cromwell's § 1132(a)(3) claim and with prejudice.

C.  Section 1132(a)(2) Claim (Third Cause of Action)

Ms. Cromwell's third cause of action is based on § 1132(a)(2). Section 1132(a)(2) provides that "a [civil] action may be brought…by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under [§ 1109]." 29 U.S.C. § 1132(a)(2). Section 1109, in turn, provides that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable *to make good to such plan any losses to the plan* resulting from each such breach, and *to restore to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . .

29 U.S.C. § 1109(a).

Kaiser contends that Ms. Cromwell's third cause of action should be dismissed because a § 1132(a)(2) claim requires that there be an injury to the plan and the complaint fails to allege such an injury. In response, Ms. Cromwell argues that she has a viable § 1132(a)(2) claim because she is not asking for any monetary relief for herself specifically but rather is asking that Kaiser

> be compelled to disgorge *to the Trustees of the Plan, for the benefit of all participants and beneficiaries of the Plan*, all sums received by it for speech therapy services for autism delivered to Plan

---

[3] In *A.F. v. Providence Health Plan*, 35 F. Supp. 3d 1298 (D. Or. 2014), the court went further, indicating that there could be a violation of plan terms based on a violation of a state Parity Act because state law was implicitly incorporated into the terms of the plan. *See id.* at 1304-05 (stating that "[i]t is a general principle of insurance law that all insurance plans include all applicable requirements and restrictions imposed by state law" and, when there is a conflict between an insurance policy provision and state law, state law governs). *A.F.*, however, is not binding precedent on this Court and no other court appears to have issued a similar holding.

Moreover, *A.F.* is problematic in that it does not address the fact that it would seem to place a plan administrator in a Catch 22. That is, if there were an explicit plan term that arguably conflicted with state law, the plan administrator would have to decide whether to follow the express plan term because if it did not, then it could be sued for breach of fiduciary duty for failure to comply with the plan terms; however, if it did comply with the express plan term, then it could still be sued for failing to follow state law impliedly incorporated into the plan terms.

8

> participants and beneficiaries in excess of what it would have
> received had it imposed only the allowable $20 per visit copay for
> such services.

Compl. ¶ 37.

Ms. Cromwell's argument misses the point. "[A § 1132(a)(2)] claim for breach of fiduciary duty [pursuant to § 1109] gives a remedy for injuries to the ERISA plan as a whole, but *not* for injuries suffered by individual participants as a result of a fiduciary breach." *Wise v. Verizon Commc'ns Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (emphasis added). Thus, "[t]o allege a fiduciary breach under § 1132(a)(2), [a plaintiff] must allege that the fiduciary injured the benefit plan or otherwise 'jeopardize[d] the entire plan or put at risk plan assets.'" *Id.*; *see also Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) (stating that "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary"). The focus under § 1132(a)(2) is injury to the plan, not denial of plan benefits to *plan beneficiaries*.

In the instant case, the fact that Ms. Cromwell is asking for any disgorged money to be given to the plan instead of herself is largely irrelevant because the injury she has identified is an injury suffered not by the plan but by individual participants – *i.e.*, those who paid the $2,000 deductible before the $20 co-pay process began. *Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406 (9th Cir. 1988), the main case on which Ms. Cromwell relies, is easily distinguishable because, there, the plaintiffs alleged that plan fiduciaries had misused plan assets, thus injuring the plan as a whole. *See id.* at 1414 (stating that, "[i]n breaching [the] duty [of loyalty], the fiduciaries abused and put at risk assets belonging to the entire ERISA plan, not just benefits due an individual plan beneficiary"). If anything, in the case at bar, the plan saved money by payout of less benefits. Section 1132(a)(2) is therefore not the appropriate means to bring Plaintiff's challenge.

Implicitly recognizing the problem with her position, Ms. Cromwell made a slightly different argument at the hearing on the motion to dismiss. More specifically, Ms. Cromwell attempted to equate injury to the plan with the loss of adequate provision of benefits. However

9

characterized, the asserted injury is still sustained by individual participants and beneficiaries, not the plan as a whole. This was recognized by the courts in both *Nobleza v. Macy's*, No. C-10-02064 RMW, 2010 U.S. Dist. LEXIS 122949, at *4-5 (N.D. Cal. Nov. 5, 2010) (Whyte, J.) (holding that plaintiffs failed to allege an injury to the plan; plaintiffs had alleged that defendant misused plan assets because they were "hoarded" rather than distributed to a significant number of plan participants), and *LaSpina v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV-12-0707-PHX-FJM, 2012 U.S. Dist. LEXIS 119410 at *3 (D. Ariz. Aug. 23, 2012) (no injury to plan where plaintiffs alleged that defendants' systematic denial of benefits for a certain type of autism treatment). As Kaiser pointed out at the hearing, if the Court were to accept Plaintiff's argument, a § 1132(a)(2) claim for breach of fiduciary duty would always lie whenever a claim for benefits was denied.

In her supplemental letter brief, Ms. Cromwell raised one final argument as to why there should not be dismissal of the § 1132(a)(2) claim.[4] She contends that "even mere benefit denials – not normally actionable as breaches of fiduciary duty – become actionable under 29 U.S.C. § 1132(a)(2) for the benefit of the plan as a whole, when the fiduciaries' violations are 'willful' and 'systematic.'" Pl.'s Letter Br. at 2 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)). The Court acknowledges that, in *Russell*, the Supreme Court stated, in a hypothetical, that, "[i]f the plan administrator's refusal to pay contractually authorized benefits had been willful and part of a larger systematic breach of fiduciary obligations, respondent in this hypothetical could have asked for removal of the fiduciary pursuant to §§ [1132](a)(2) and [1109]." *Russell*, 473 U.S. at 147. However, case law subsequent to *Russell* has not provided much guidance as to what kind of facts would support such a claim, particularly in light of the well-established case law that a § 1132(a)(2) claim for breach of fiduciary duty pursuant to § 1109 requires an injury to the plan. In any event, the only kind of relief, for a "willful and . . . larger systematic breach of fiduciary obligations," contemplated by *Russell* – relief for the plan – was removal of the

---

[4] The Court notes that it did not ask for supplemental briefing on the § 1132(a)(2) claim and, thus, Ms. Cromwell's additional briefing on the claim should arguably be stricken. In the interest of justice, however, the Court addresses the merits of the new argument.

10

fiduciary. *See id.* *Russell* did not suggest the availability of the relief sought by Ms. Cromwell – disgorgement to the plan of all payments collected from beneficiaries – payment which would likely come from plan assets.[5] *See* Compl. ¶ 37.

The Court therefore dismisses the § 1132(a)(2) claim with prejudice.

### III. CONCLUSION

Kaiser's motion to dismiss both the § 1132(a)(3) claim and the § 1132(a)(2) claim is granted. The case shall proceed on Ms. Cromwell's § 1132(a)(1)(B) claim.

This order disposes of Docket No. 15.

**IT IS SO ORDERED**.

Dated: April 4, 2019

_____
EDWARD M. CHEN
United States District Judge

---

[5] Providers were entitled to payment for their services. The issue here is whether the first $2,000 in payment to providers should be paid by the Plan (if no deductible) or the beneficiary (if there is a deductible).